FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 1 2 2013

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

IN RE APPLICATION OF
SOCIEDAD MILITAR SEGURO DE VIDA
PURSUANT TO 28 U.S.C. § 1782
FOR JUDICIAL ASSISTANCE IN
OBTAINING EVIDENCE FOR USE
IN A FOREIGN TRIBUNAL

1:13 - MI   0036 -JOF

_____/

### SOCIEDAD MILITAR SEGURO DE VIDA'S APPLICATION FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 AND INCORPORATED MEMORANDUM OF LAW

Sociedad Militar Seguro de Vida ("SMSV"), respectfully submits this application for an order for discovery pursuant to 28 U.S.C. § 1782 (the "Application") from LT Investment Inc. ("LT Investment"), LifeTrade Management Company LLC ("LMC"), AVS Servicing LLC ("AVS Servicing"), AVS Underwriting LLC ("AVS Underwriting"), Wells Fargo Bank, N.A. ("Wells Fargo"), JPMorgan Chase Bank, N.A. ("JPMorgan"), John Marcum ("John Marcum"), Roy Smith ("Roy Smith"), and Phillip Loy ("Phillip Loy") (collectively, the "Discovery Targets") each residing and/or conducting business in this District for use in a civil action currently pending in Curacao.

Section 1782 exists to permit discovery of documents and testimony in the United States in support of actions pending before foreign tribunals. In this case,

1

the discovery sought by SMSV's Application relates to an action pending in Curacao regarding SMSV's investment with a Curacao-based investment fund called the LifeTrade Fund, B.V. (the "Fund"). That action involves several claims against the Fund's investment manager, its principals, and auditor, stemming from their role in misrepresenting facts regarding the Fund's financial condition in order to induce investors such as SMSV into making substantial investments in the Fund. Further, SMSV's Application is being filed in this District because each Discovery Target listed above resides or has a presence in this District and is believed to be in possession, custody, or control of evidence relevant to SMSV's claims due to their close affiliations with the Fund. Accordingly, and as shown below, the elements of 28 U.S.C. § 1782 are met, and this Court should grant the Application.

## BACKGROUND[1]

A.   *SMSV's Relationship With The LifeTrade Fund, B.V.*

1.   SMSV is an organization based in Argentina that provides an array of financial services for members of the country's armed services, including, managing salaries and pensions, attracting outside investments, and lending

---

[1]   The facts relevant to this Application are set forth below and in the attached Declarations of Jorge Diaz and Thomas Aardenburg (the "Diaz Declaration" and "Aardenburg Declaration," respectively). The Diaz Declaration and the Aardenburg Declaration are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

2

money.  In the ordinary course of its business SMSV makes certain investments with respect to the funds it manages.

2.      In 2003, SMSV began making investments in the Fund.  The Fund is an investment vehicle incorporated in Curacao that focuses on the life settlement market.  Prior to the Fund's suspension of shareholder redemptions in March 2012, the Fund actively invested in securities believed to be backed by a diversified pool of life insurance policies issued by a broad group of U.S. insurance companies.  As of April 2012, the Fund's portfolio was purportedly comprised of some 481 life insurance policies reportedly having a face value of $912 million.

B.      *The Fund's Management*

3.      According to the Fund's website and its promotional documents, the Fund is managed by LMC which is "part of the AVS Group."   The Fund's prospectus also provides that LMC subcontracted its role as investment manager to its wholly-owned subsidiary Lifetrade Asset Management N.V. ("LAM") and that LAM served as the Fund's "Collateral Manager and Servicer."  Additionally, AVS Servicing provided asset management services as a "Sub-Servicer" for the Fund and AVS Underwriting, which was acquired by LMC in 2010, served as a life expectancy provider or "LE Provider" for the Fund.  As such, LMC, LAM, AVS Servicing, and AVS Underwriting, each played a role in administering and

3

servicing the Fund's investment portfolio. These entities appear to have coordinated their activities with the Fund's bankers (JP Morgan and FirstCaribbean International Bank) as well as the Fund's Administrator (HBM Fund Services B.V.). In fact, a number of the Fund's marketing materials reference the Fund's relationship with JPMorgan, a Discovery Target identified in this Application.

4. According to the Fund's prospectus, Roy Smith and John Marcum are the two primary individuals who served on the Fund's "Management Team" as Managing Directors of LMC. Specifically, Roy Smith is the Chairman and Founder of the Fund and John Marcum is the CEO of LCM as well as an officer for AVS Underwriting. The Fund's correspondence to shareholders also indicates that Lifetrade Management Company N.V. is a Managing Director of the Fund and that this entity is managed by TMF Curacao N.V. and Roy Smith.

5. The Fund solicited investments from a broad investor base which includes institutions, public authorities, pension funds, and professional investors to finance the purchase of securities tied to the life settlement market. In addition, the Fund maintained a significant credit facility with Wells Fargo, another Discovery Target identified in this Application. Specifically, on June 25, 2008, the Fund entered into a $500 million credit facility agreement with Wells Fargo. On June 26, 2009, the credit facility was reduced to $225 million and on October 4,

4

2010 it was reduced again to $200 million.  The Fund's obligations with respect to the Wells Fargo credit facility were secured by the Fund's assets, including, the Fund's life settlement investment portfolio.  Based on documents provided by the Fund, it also appears that the Fund and its Irish affiliate, Lifetrade Life Settlements Ltd. (Ireland) ("Lifetrade Ireland") are guarantors under the Wells Fargo credit facility.

C.    *SMSV's Investment in the Fund*

6.    SMSV first began investing in the Fund in 2003.  In 2008, SMSV redeemed its entire investment in the Fund, however, in 2010, it began investing again in increments of $500,000 to $2,000,000 until its total investment reached approximately $14.5 million in 2011.  SMSV based its investment decisions on information provided by the Fund and its agents—LMC, AVS Servicing, Roy Smith and John Marcum—as well as the Fund's annual audited statements prepared by KPMG Associates B.V. ("KPMG").

7.    Between August and September 2011, the Fund began actively requesting an in-person meeting with SMSV executives in Atlanta, Georgia for the purpose of soliciting additional investments from SMSV.

8.    On October 4, 2011, the Fund delivered a solicitation letter signed by John Marcum (the Fund's CEO) to Mr. Jorge Diaz of SMSV seeking an additional

5

$5 million investment. The letter requested that SMSV confirm their "new subscription of $5 million" based on the following caveats: (a) the total amount would be subscribed during the month of October 2011; (b) the total amount would be subscribed with the NAV valuation of October 1, 2011; and (c) in the event of a crisis in Argentina, SMSV would tender a redemption request and the Fund at the management's discretion would provide a maximum of 10% liquidity without penalty during the first year and 20% liquidity during the second year.

9.      On October 9, 2011, representatives of the Fund and SMSV met at the Ritz-Carlton in Atlanta, Georgia for the purpose of discussing SMSV's investment in the Fund. On October 10, 2011, representatives from the Fund and SMSV met at the offices of AVS located at 175 Town Park Drive, Suite 400, Kennesaw, Georgia. Those present at the meeting on behalf of SMSV included: Mr. Jorge Diaz, Mr. Guillermo Duhalde (Director), and Mr. Hermenegildo Barbosa (Director). Those present on behalf of the Fund, included: Guillermo Herrera (Director), Rafael Martino (Regional Director of Argentina), John Marcum (CEO and Executive Director of LMC), Philip Loy (CEO of AVS), and Antonio Com (Managing Director of AVS).

10.      During the meetings in Atlanta, SMSV's representatives requested and received information regarding the Fund's investment process with respect to

6

the life settlement market, including among other things, the Fund's method of evaluating and purchasing policies, measuring life expectancies, valuing policies incorporated into the Fund's portfolio, monitoring maturing policies, and the alleged legal risks associated with the Fund's investments processes. The information SMSV received during the Atlanta meetings contained references to and representations made by the Fund with respect to its agents, specifically, LMC, AVS Servicing, Roy Smith and John Marcum.

11. For its part, AVS Servicing presented a summary of its role as a provider of asset management and other services to the Fund and gave SMSV's representatives certain marketing and promotional materials that SMSV relied on, together with the Fund's representations, in making its investment decisions.

12. In short, the Fund used the Atlanta meetings with SMSV to promote itself and to solicit additional investment by SMSV into the Fund. No disclosures were made during these meetings related to the Fund's financial condition or its deteriorating credit situation, nor was there any disclosure made as to the potential suspension of shareholder redemptions absent additional cash flows in favor of the Fund.

13. Following the meeting in Atlanta, Georgia, the Fund sent a second solicitation letter to SMSV on October 12, 2012, requesting confirmation of the

additional $5 million investment previously discussed during the Atlanta meeting. This letter was signed by Roy Smith and is similar to the letter dated October 4, 2011 except that now the Fund was willing to provide SMSV, in the event of a crisis in Argentina, a maximum of 20% liquidity without penalty during the first year and 10% liquidity during the second year.

14. On October 27, 2011, SMSV proceeded to make transfers totaling $4,999,955 increasing its investment in the Fund to an aggregate total of $14,499,810. This investment was made based on the representations made to SMSV during the meetings in Georgia.

15. Between November 2011 and March 2012, SMSV's investment in the Fund was believed to be operating within normal parameters. Regular statements from the Fund were received by SMSV and the strategy at the time was for SMSV to remain invested in the Fund for at least six years to avoid penalties for early redemptions.

D.   *Fund Suspends Shareholder Redemptions and NAV Calculations*

16. On March 1, 2012, the Fund's managers suspended all shareholder redemptions and also suspended publishing the Fund's Net Asset Value ("NAV"). The Fund cited several reasons for these suspensions in a letter to all shareholders dated March 8, 2012. Among them, the Fund noted that within "the next 12

months, investors may submit redemptions for over 30% of the net asset value of the Fund." The Fund also represented that it was renegotiating its credit facility with Wells Fargo and that it was unsure whether it would be able to successfully do so triggering obligations which could comprise over 40% of the Fund's NAV. The letter also noted that on February 23, 2012, Japanese financial regulators had ordered an investor in the Fund to suspend its operations for a month (for reasons not described). The letter ultimately informed investors that it could not "determine the outcome of the investigation or liquidity requirements that this could create."

17.	Thereafter, on May 17, 2012, the Fund scheduled an extraordinary general meeting of shareholders (the "EGM") for the purpose of discussing and voting on three separate options related to the renegotiation of the Fund's debt with Wells Fargo. Option A entailed delivering the entire Fund's portfolio of life settlements to Wells Fargo in exchange for the extinguishment of the Fund's debt. Option B called for the negotiation of a bridge loan with Wells Fargo in order to buy the Fund additional time to renegotiate its credit facility. Option C called for the Fund to seek approximately $95 million in additional financing from a mezzanine lender.

18.	SMSV analyzed these three options. During this process, SMSV and

its advisors analyzed information provided by the Fund, including, the Fund's audited financial statements by KPMG, and concluded that each of the three options presented to shareholders was problematic or unlikely to succeed. For this reason, SMSV proposed an alternative course of action to deal with the renegotiation of the debt owed to Wells Fargo. This option included a voting provision for certain Fund shareholders in order to afford them greater control over the Fund's decision-making process. However, this proposal was rejected by the Fund because it allegedly failed to comply with the relevant deadlines associated with the inclusion of an agenda item for consideration at the EGM. Ultimately, the shareholders of the Fund elected to proceed with Option C despite SMSV's opposition to this option.

19.    According to information disclosed by the Fund's Investment Manager, the Fund was working to complete negotiations with an unidentified mezzanine lender prior to June 15, 2012, but no further details are known about those efforts or negotiations.

20.    Later, SMSV learned that Wells Fargo moved to foreclose on certain notes issued by Lifetrade Ireland, the entity believed to be the true ultimate owner of the life insurance contracts securing the Wells Fargo credit facility.[2]

---

[2]    According to documents provided by the Fund prior to the EGM, LT

10

Subsequently thereafter, the Fund announced that a settlement was entered into between Lifetrade Ireland and Wells Fargo on August 14, 2012. The settlement is believed to have allowed the Fund through the end of November 2012, to find a buyer for the portfolio to settle its debt with Wells Fargo and replace Wells Fargo as the secured lender. However, to date, no further information has been received about the November deadline or the outcome of the Fund's efforts.

21. Since the Fund suspended redemptions in May 2012, SMSV has been unable to access its funds or redeem its shares. As of April 2012, the current value of SMSV's total investment is approximately $14.5 million. Accordingly, SMSV has been damaged by the loss of its investment in the Fund which is approximately $14.5 million.

22. SMSV subsequently filed a civil action in Curacao. The lawsuit which is currently pending in Curacao is described in more detail below. SMSV has reason to believe that the Discovery Targets have documents and information relevant to the action pending in Curacao based on their relationships with the Fund and/or its affiliates, principals and agents. Accordingly, SMSV respectfully requests, pursuant to 28 U.S.C. 1782, this Court's judicial assistance in obtaining

---

Investments, a Discovery Target in SMSV's Application, currently holds debt securities of Lifetrade Ireland which were acquired directly from the Fund in exchange for preferred shares in the Fund.

the evidence it requires to prosecute the action in Curacao.

## SMSV'S CIVIL ACTION PENDING IN CURACAO

23.    During the period between May and November 2012, SMSV undertook an exhaustive review of its investments with the Fund, including an investigation of the Fund's solicitations and representations as well as the role of the Fund's principals and agents in the same solicitations and investments. Following this internal investigation, SMSV concluded that a number of material misrepresentations and omissions were made to secure SMSV's investment in the Fund.

24.    On December 18, 2012, after serving appropriate demand letters, SMSV filed an action in the Court of First Instance of Curacao (the "Curacao Action") against LMC, Roy Smith, John Marcum, TMF Curacao N.V. ("TMF"), and KPMG Associates B.V. ("KPMG") (collectively, the "Curacao Defendants").[3] The lawsuit alleges that LMC as the Fund's investment manager was responsible for all investment decisions executed by the Fund. Notably, LMC was managed by Roy Smith and John Marcum. TMF is the Managing Director of Lifetrade Management Company N.V. the Managing Director of the Fund and KPMG served as the Fund's auditor.

---

[3]    A certified translation of the SMSV's complaint is attached as Exhibit 1 to the Aardenburg Declaration.

12

25.     The lawsuit also alleges that SMSV was induced into making significant investments in the Fund through numerous misrepresentations and omissions made by the Curacao Defendants with respect to the Fund's financial condition.   Had SMSV known the extent and severity of the Fund's liquidity issues, SMSV would not have invested in the Fund, including its last investment in the amount of approximately $5 million following the meeting in Georgia with Fund representatives and agents.   Six months after the referenced meeting in Georgia, the Fund elected to suspend the Fund's NAV and shareholder redemptions.   As such, SMSV has been unable to access its funds or redeem its shares and has been unable to obtain meaningful information regarding its investment.

26.     SMSV's lawsuit also alleges that on or around August 8, 2012, Wells Fargo announced a public foreclosure sale of the Fund's investment portfolio through Lifetrade Ireland which resulted in an apparent settlement agreement between Lifetrade Ireland and Wells Fargo on August 14, 2012.   The settlement apparently allowed the Fund through the end of November 2012 to find a buyer for its portfolio in order to settle the Fund's debt with Wells Fargo.   To date, SMSV has not received any information regarding the November 2012 deadline or the status of the Fund's investment portfolio.   This lack of information impacts

SMSV's ability to recover its investment.

27.    In light of these facts, SMSV has also alleged that the Fund is currently insolvent and undergoing some form of liquidation which, in turn, has caused SMSV to suffer substantial damages as a result of the loss of its investment. SMSV calculates that its damages amount to approximately $14.5 million (the total value of its investment in the Fund as of April 2012 exclusive of interest).

28.    In support of its claim for damages, SMSV alleges that LMC and its agents, TMF, Roy Smith and John Marcum, mismanaged the affairs of the Fund by:

> (a)    misrepresenting the Fund's financial condition, its status, and its future prospects in order to induce SMSV into making additional investments in the Fund despite the Fund's financial troubles;
>
> (b)    entering into the Wells Fargo credit facility which the Fund was unable to properly service and failing to inform SMSV about the Fund's financial situation prior to SMSV's investment;
>
> (c)    paying and failing to disclose the exorbitant fees paid by the Fund to the Fund's investment manager and other related parties (e.g., broker commissions, investment management fees, and administration fees); and
>
> (d)    misrepresenting the Fund's financial condition to its shareholders and to its auditor, KPMG.

29.    In addition, SMSV alleges that KPMG was negligent in auditing the Fund's financial statements and that it failed to prepare the financial statements in

14

accordance with International Financial Reporting Standards.

30.     In light of all these allegations, SMSV has asserted a claim for declaratory judgment requesting that the Court:

> (a)     declare that the Curacao Defendants are jointly and severally liable for the damages sustained by SMSV or, in the alternative, to declare the extent to which each individual defendant is liable for the damages that SMSV has sustained;
>
> (b)     order each of the Curacao Defendants to pay damages to SMSV to be established in separate proceedings and liquidated in accordance with the law; and
>
> (c)     order each of the Curacao Defendants pay the costs of the proceedings.

31.     Through this Application, SMSV seeks to obtain critical evidence from the Discovery Targets for use in the Curacao Action, including, among other things, documents and communications in the Discovery Targets' possession pertaining to the Fund's NAV, the Fund's assets and liabilities (including the Wells Fargo credit facility), the Fund's unaudited and audited financial statements, and the Fund's marketing and solicitation practices.  Evidence obtained from the Discovery Targets in this District will be used to support SMSV's claims in the Curacao Action and is vital to SMSV's lawsuit against the Curacao Defendants. The Curacao Defendants will have access to SMSV's evidence to prepare and present their defense.

## DISCOVERY REQUESTED

32.     Through this Application, SMSV requests the following discovery from the Discovery Targets listed below.  SMSV also requests that the depositions requested herein be taken within thirty (30) days of this Court's deadline for the production of requested documents.

### A.     Document Production

(a)     All documents and communications pertaining to any assets of the Fund acquired by or transferred, directly or indirectly, to any company related to or affiliated with the Fund.

(b)     All documents and communications pertaining to any liabilities of the Fund assumed by or transferred to any company related to or affiliated with the Fund.

(c)     All documents and communications pertaining to the Fund's audited and unaudited financial statements, including, but not limited to any audits conducted by KPMG and Deloitte Ireland.

(d)     All documents and communications regarding (a) the Fund's credit facility with Wells Fargo, (b) the refinancing and/or renegotiation of the Fund's credit facility with Wells Fargo, (c) any security interests and/or guarantees provided to Wells Fargo by the Fund and its affiliates, and (d) the fees earned by

Wells Fargo with respect to its financing transactions with the Fund.

(e)     All documents and communications regarding any due diligence information provided by the Fund or its principals and agents to Wells Fargo and/or KPMG concerning the Fund.

(f)     All documents and communications regarding any proposed debt restructuring alternatives evaluated, analyzed, or considered by the Fund.

(g)     All documents and communications regarding the sale, transfer, or use of the Fund's assets, including, but not limited to, any foreclosure or judicial process initiated against the Fund's assets in any jurisdiction around the world.

(h)     All documents and communications pertaining to the settlement agreement executed between Lifetrade Ireland and Wells Fargo in 2012.

(i)     All documents and communications regarding the valuation of the Fund's investment portfolio from January 1, 2009 to the present.

(j)     All documents and communications regarding liabilities incurred by the Fund, directly or indirectly, from January 1, 2009 to the present, including, but not limited to any contingent liabilities associated with litigation pending anywhere in the world, against the Fund, its investment manager, or their agents.

(k)     All documents and communications regarding assets owned by the Fund, directly, indirectly, or beneficially, from January 1, 2009 to the present.

(l)     All documents and communications regarding the Fund's liquidity position from January 1, 2009 to the present.

(m)     All documents and communications regarding the status and current valuation of the Fund's investment portfolio.

(n)     All documents and communications regarding to the procedure or methodology for calculating the Fund's NAV from January 1, 2009 to the present, any changes made with respect thereto, and/or any adjustments or recalculations made to the Fund's NAV.

(o)     All documents and communications pertaining to the Fund's marketing strategies, including, any documents and communications dealing with marketing efforts geared towards SMSV and/or Argentina.

(p)     All documents and communications pertaining to the meeting in 2011 in Georgia, between representatives the Fund, AVS Servicing, and SMSV.

(q)     All documents and communications regarding the relationship and the nature of any direct or indirect business transactions between the Fund and AVS Servicing and AVS Underwriting.

(r)     All documents and communications regarding the relationship and the nature of any direct or indirect business transactions between the Fund and LT Investments and Lifetrade Ireland.

(s)     All documents and communications regarding the relationship and the nature of any direct or indirect business transactions between the Fund and LMC and LAM.

(t)     All documents and communications regarding fees, commissions, and bonuses paid by the Fund to its officers, managing directors, employees, affiliates, or third parties, including, but not limited to, LT Investment, LMC, LAM, Lifetrade Ireland, Lifetrade Management Company N.V., AVS Servicing, AVS Underwriting, TMF, John Marcum, Roy Smith, Phillip Loy, and Antonio Com.

(u)     All documents and communications regarding shareholder redemptions for the 3 years leading up to the suspension of redemptions.

(v)     All documents and communications pertaining to SMSV's proposal for a fourth debt restructuring alternative ahead of the EGM.

(w)     All documents and communications pertaining to SMSV's demand letters in the Fall of 2012, including any documents and communications between the Fund and KPMG.

### B.     Depositions

(a)     The sworn deposition of the LT Investment person with most knowledge regarding (1) the documents requested by SMSV and (2) LT Investment's relationship to the Fund.

19

(b)   The sworn deposition of the LMC person with most knowledge regarding (1) the documents requested by SMSV and (2) LMC's relationship to the Fund.

(c)   The sworn deposition of the AVS Servicing person with most knowledge regarding (1) the documents requested by SMSV and (2) AVS Servicing's relationship to the Fund.

(d)   The sworn deposition of the AVS Underwriting person with most knowledge regarding (1) the documents requested by SMSV and (2) AVS Underwriting's relationship to the Fund.

(e)   The sworn deposition of the Wells Fargo person with most knowledge regarding (1) the documents requested by SMSV and (2) the Fund's credit facility with Wells Fargo.

(f)   The sworn deposition of the JPMorgan person with most knowledge regarding (1) the documents requested by SMSV and (2) the Fund's relationship with JPMorgan.

(g)   The sworn deposition of John Marcum.

(h)   The sworn deposition of Roy Smith.

(i)   The sworn deposition of Phillip Loy

## RELIEF REQUESTED

33.     SMSV respectfully requests that this Court enter an Order (a) compelling the production of the documents listed above within thirty (30) days of service of a subpoena commanding the production of those documents; (b) compelling the depositions of the relevant persons associated with the Discovery Targets within thirty (30) days of the deadline for the production of the documents; and (c) further ordering the Discovery Targets to preserve evidence sought by SMSV to insure that nothing is lost or destroyed in the interim due to normal document retention policies or the passage of time.[4]

## MEMORANDUM OF LAW

## I.     SMSV's APPLICATION MEETS THE REQUIREMENTS SECTION 1782

34.     Section 1782 provides, in part, that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal including criminal investigations conducted before formal accusation."  28 U.S.C. § 1782(a); see also In re Chevron Corp., No. 10-MI-0076, 2010 WL 8767265, at *2 (N.D. Ga. Mar. 2, 2010); In re Roz Trading

---

[4]   SMSV respectfully submits a proposed Order for the Court's consideration at **Exhibit C** hereto.

Ltd., 469 F.Supp.2d 1221, 1222 (N.D. Ga. 2006).   Specifically, section 1782 provides that a court order may be made pursuant to an "application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court." Id. "To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." Id.

35.    Courts have distilled from the language of section 1782 the following basic requirements: "(1) the request must be made by a foreign or international tribunal, or by any interested person; (2) the request must seek evidence, whether it be the testimony or statement of a person or the production of a document or other thing; (3) the evidence must be for use in a proceeding in a foreign or international tribunal; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." See e.g., In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 685 F.3d 987, 1001 (11th Cir. 2012); In re Clerici, 481 F.3d 1324, 1331-32 (11th Cir. 2007); Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 246-47 (2004).

36.    As set forth below, SMSV's 1782 application meets all of the

22

statutory requirements of section 1782 and should therefore be granted.

### A.     SMSV Is An "Interested Person" Under Section 1782

37.    The court in Intel focused on the statutory language granting discovery to an "interested person" and went on to define an interested person as a litigant in a proceeding.  Intel, 542 U.S. at 256; Consorcio Ecuatoriano, 685 F.3d at 993; Chevron, 2010 WL 8767265, at *3.  In this case, SMSV is an "interested person" for the purposes of section 1782 as it is gathering evidence and testimony for use in a civil action currently pending in Curacao where it is the plaintiff. Thus, because SMSV requires evidence from the Discovery Targets to prosecute the Curacao Action its interest in obtaining judicial assistance is reasonable and satisfies the requirements of section 1782.

### B.     SMSV's Application Requests Documentary and Testimonial Evidence.

38.    As set forth herein, SMSV's Application requests documentary evidence and authorization to depose the various Discovery Targets; thus, satisfying the section 1782 requirement that the request must seek evidence, whether it be the testimony or statement of a person, or the production of a document or other thing.   In re Clerici, 481 F.3d at 1331-32; Consorcio Ecuatoriano, 685 F.3d at 993; Chevron, 2010 WL 8767265, at *3.

## C. The Discovery Targets Reside or Conduct Business in this District.

39.    LT Investment is a Delaware company doing business in this District and has an established address at 101 Beckett Lane, Suite 202, Fayetteville, Georgia 30214. LT Investment holds debt securities in Lifetrade Ireland and is likely to have documents and information in its possession regarding Lifetrade Ireland's transaction with Well Fargo, the value of the Fund's life insurance portfolio, and any due diligence information provided to both Wells Fargo and KPMG regarding the Fund's assets, liquidity and financial position and its annual financial statements.

40.    LMC is a Delaware limited liability company with an established address in this District at 101 Beckett Lane, Suite 202, Fayetteville, Georgia 30214. LMC is the Fund's Investment Manager and is likely to have documents and information in its possession relevant to SMSV's claim in Curacao including, but not limited to, documents and information relevant to the Fund's investments, assets, liquidity and financial position.

41.    AVS Servicing is a Georgia limited liability company with an established address in this District at 175 TownPark Drive, Suite 400, Kennesaw, Georgia 30144. AVS Servicing provided asset management and other services to the Fund and is likely to have documents and information in its possession relevant

24

to SMSV's claim in Curacao including, but not limited to, documents and information relevant to the Fund's investments, assets, liquidity and financial position.

42. AVS Underwriting is a Georgia limited liability company with an established address in this District at 175 TownPark Drive, Suite 400, Kennesaw, Georgia 30144. According to Fund documents provided to shareholders prior to the EGM, AVS Underwriting may have served as a life expectancy provider or "LE Provider" and also shared common ownership with Fund's investment manager since October 2012. As such, AVS Underwriting is likely to have documents and information in its possession relevant to SMSV's claim in Curacao including, but not limited to, documents and information relevant to the Fund's investments, assets, liquidity and financial position.

43. John Marcum is a person found in this District with a residential address at 175 Troon Drive, Fayeteville, Georgia, 30215. John Marcum is the CEO and Managing Director of LMC and an officer of AVS Underwriting. As such, he is likely to have documents and information in its possession relevant to SMSV's claim in Curacao including, but not limited to, documents and information relevant to the Fund's investments, assets, liquidity and financial position.

25

44.     Roy Smith is a person found in this District with a residential address at 115 Pebble Beach Drive, Fayetteville, Georgia 30215. Roy Smith is the Founder and Chairman of the Fund and a Managing Director of LMC. As such, he is likely to have documents and information in its possession relevant to SMSV's claim in Curacao including, but not limited to, documents and information relevant to the Fund's investments, assets, liquidity and financial position.

45.     Phillip Loy is a person found in this District with a residential address at 203 Blankets Creek Court, Canton, Georgia 30114. Phillip Loy is the CEO of AVS Servicing and is likely to have documents and information in its possession relevant to SMSV's claim in Curacao including, but not limited to, AVS Servicing's relationship with the Fund.

46.     Wells Fargo is a national banking entity with an established presence in this District. Wells Fargo is the Custodian, Verification, and Escrow Agent for the Fund. Wells Fargo is also the lender under the Fund's substantial credit facility and apparently entered into a settlement agreement with Lifetrade Ireland on August 14, 2012. As such, Wells Fargo is likely to have documents and information in its possession relevant to SMSV's claim in Curacao.

47.     JPMorgan is a national banking entity with an established presence in this District. JPMorgan is the Fund's U.S. banking entity and is referenced in a

number of the Fund's marketing materials. As such, JPMorgan likely to have documents and information in its possession related to the Fund's assets, liquidity and financial position.

48. Because SMSV is an interested party to proceedings before a foreign tribunal and seeks testimonial and documentary evidence from Discovery Targets that reside or are found in this District, the third section 1782 requirement is satisfied. Consorcio Ecuatoriano, 685 F.3d at 993; Chevron, 2010 WL 8767265, at *3.

### D. The Evidence Will Be Used in Proceedings in a Foreign Tribunal.

49. The evidence sought pursuant to SMSV's 1782 application will be used to support SMSV's legal claims against the Curacao Defendants in a civil action currently pending before the Court of First Instance in Curacao. There can be no question that this action in Curacao qualifies as a proceeding in a foreign tribunal; thus satisfying the final 1782 requirement for granting SMSV's application. Consorcio Ecuatoriano, 685 F.3d at 993; Chevron, 2010 WL 8767265, at *3.

### E. Granting the Application Fosters the Twin Policy Aims Behind Section 1782.

50. Granting SMSV's application also would foster section 1782's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our

27

courts." Intel, 542 U.S. at 252 (internal quotations omitted).[5]

51.   **First**, the discovery requested herein is narrowly tailored and seeks evidence highly relevant to SMSV's civil action in Curacao. Thus, granting the Application would be an efficient means of providing assistance to a party currently engaged in litigation in a foreign tribunal. See Lancaster Factoring Co. Ltd. v. Mangone, 90 F.3d 38, 41 (2d Cir. 1996) (stating that the goal of section 1782 is to provide "equitable and efficacious" discovery procedures in U.S. courts 'for the benefit of tribunals and litigants involved in litigation with international aspects'") (quoting S. Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964) ("Senate Report")); John Deere, 754 F.2d at 135 (noting that a "liberal intent to provide judicial assistance" has been "acknowledged as a primary statutory goal since section 1782's inception").

52.   **Second**, granting the Application would further the exchange of judicial assistance between the United States and Curacao. Id. (noting that section 1782 takes into account "considerations of comity and sovereignty that pervade international law"); Senate Report, at 2 (section 1782 reflects "a major step in

---

[5]   These "twin aims" are consistent with the legislative history of section 1782, as recognized in John Deere Ltd. v. Sperry Corp., 754 F.2d 132, 135 (3d Cir. 1985) (legislative history of § 1782 "reflects a determination on the part of Congress to broaden the scope of international judicial assistance afforded by the federal courts" and that, through its passage, Congress hoped that it would stimulate reciprocal aid from other countries).

bringing the United States to the forefront of nations adjusting their procedures to those of sister nations" and an "effort[ ] to improve practices of international cooperation in litigation").

53.     In summary, because SMSV has sufficiently met all of the requirements for invoking section 1782, this Court has jurisdiction to order the Discovery Targets to provide the requested discovery.

## II.     THIS COURT SHOULD EXERCISE ITS JURISDICTION PURSUANT TO SECTION 1782 AND GRANT THE APPLICATION

54.     Once a court has determined that the statutory requirements for relief under section 1782 have been met, the court is vested with the discretion to afford that relief.  A favorable exercise of discretion is most warranted when, as here, some of the targets from whom discovery is sought "may be outside the foreign tribunal's jurisdictional reach" and "their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  Intel, 542 U.S. at 264.

55.     In this case, LT Investments, Wells Fargo, JPMorgan, AVS Servicing, AVS Underwriting, and Phillip Loy are not parties to the Curacao Action and are beyond the discovery powers of the court in Curacao.  Therefore, section 1782 plays a critical role in SMSV's ability to obtain evidence from these Discovery Targets.  Id.  (noting that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available

in the United States, may be unobtainable absent § 1782(a) aid."); In re Republic of Ecuador, 2010 WL 4027740, No. 10-MC-00040, at *1 (E.D. Ca. Oct. 14, 2010); Roz Trading Ltd., 469 F.Supp.2d at 1227; In re Imanagement Servs., Ltd., 2005 WL 1959702, at *3 (E.D.N.Y. Aug. 16, 2005).

56.    LMC, John Marcum and Roy Smith are parties to the Curacao Action, however, they each reside in this District and are likely to possess relevant evidence and information in their capacity as the Fund's managers which is located in this District.

57.    Further, there is no law, rule of evidence, or civil procedure in Curacao prohibiting the filing of this Application or the requests made in it. Accordingly, section 1782 relief is warranted in this case because it would be more efficient for SMSV to obtain the evidence it needs from LMC, John Marcum and Roy Smith in this District given that these Discovery Targets each reside and/or conduct business in this District. In re Procter & Gamble Co., 334 F.Supp.2d 1112 (E.D. Wis. 2004) (finding that discovery could be sought against a party in the foreign proceedings, in part, because "[i]t is more efficient for a court located in the Eastern District of Wisconsin to order discovery from persons located in such district than to force [the petitioner] to seek the same discovery in as many as five foreign actions and return to this court if its efforts fail.").

30

58. Moreover, SMSV's 1782 Application is narrowly tailored to the subject matter of SMSV's civil action pending in Curacao, and is therefore not intrusive or unduly burdensome. With respect to SMSV's document requests, SMSV has carefully crafted distinct categories of documents that cover the type of information it seeks to prosecute the Curacao Action. And, with respect to testimonial evidence, SMSV has requested that the Court authorize SMSV to depose each of the Discovery Targets in connection with their knowledge of the document requests and the Fund's operations. These requests would impose no undue burden on the Discovery Targets in light of their presence in this District, therefore, warranting the Court to exercise its discretion in granting SMSV's Application.

## III. SMSV'S APPLICATION SHOULD BE GRANTED ON AN EX PARTE BASIS

59. Section 1782 applications are typically made on an *ex parte* basis by a party without the need to notify in advance the party from whom discovery is sought or the adverse party in the foreign proceeding. In re Chevron, No. 10-MI-0076, 2010 WL 8767265, at \*5 (N.D. Ga. Mar. 2. 2010). In fact most 1782 applications are filed and decided *ex parte*. In re Braga, 272 F.R.D. 621, 625 (S.D. Fla. 2011) (citing In re Clerici, 481 F.3d at 1333); see also In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 685 F.3d

31

987, 1001 (11th Cir. 2012) (affirming the district court's denial of motion to vacate ex parte order granting CONECEL's 1782 application and the denial of discovery target's motion for reconsideration).

60.    This is due to the fact that any issues a discovery target may have with the proposed discovery can be addressed in response to the requested discovery. See, e.g., In re Clerici, 481 F.3d at 1329 (affirming district court's denial of motion to vacate order granting *ex parte* application for discovery pursuant to 28 U.S.C. § 1782); Chevron, 2010 WL 8767265, at *5; In re Republic of Ecuador, 10-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) (noting that the Court's order does not contest the discovery target from contesting the subpoena once issued); In re Republic of Ecuador, 10-00040, 2010 WL 4027740, at* 2 (E.D. Cal. Oct. 14, 2010); In re Perez Pallares, No. 10-02528, 2010 WL 4193072, at *2 (D. Colo. Oct. 20, 2010) ("To the extent the respondents disagree or seek modification of the requirements, such can be the subject of appropriate motions."). Accordingly, the granting of this Application on an *ex parte* basis is normal on section 1782 practice and does not prejudice the rights of the Discovery Targets.

## CONCLUSION

61.    In short, courts have routinely recognized that applications for judicial assistance pursuant to section 1782 should be freely granted in the interest of

32

justice and comity, particularly, when certain requirements and discretionary factors are met. As set forth herein each of these requirements and discretionary factors have been satisfied by SMSV. Accordingly, SMSV respectfully requests that the Court grant this Application and enter an order authorizing SMSV to (a) issue the subpoenas attached hereto as **Exhibits D-L** to the Discovery Targets requesting the documents described herein and (b) take the depositions of the Discovery Targets within thirty (30) days of the deadline for the production of the documents by the Discovery Targets.

Dated:  March 7, 2013

Respectfully submitted,

**THE LANG LEGAL GROUP LLC**
Eric C. Lang
The Lang Legal Group LLC
1900 Century Place, Suite 110
Atlanta, Georgia 30345
Tel: (404) 320-0990
Fax: (404) 320-0908

By:  /s/
Eric C. Lang

– and –

**ASTIGARRAGA DAVIS**
Edward H. Davis, Jr. Fla. Bar No. 704539*
Arnoldo B. Lacayo, Fla. Bar. No. 675482*
Rafael J. Valdes, Fla. Bar. No. 089411*
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel: (305) 372-8282
Fax: (305) 372-8202

*Attorneys for Sociedad Militar Seguro de Vida*

**Pro Hac Vice* motions forthcoming if necessary